LOOMIS v. HAMERAH

[140 N.C. App. 755 (2000)]

━━━━━━━━━━

KATHERINE LOOMIS, PLAINTIFF v. IMRAN HAMERAH AND KHLOUD KAFF, DEFENDANTS

No. COA99-1373

(Filed 5 December 2000)

**Landlord and Tenant— summary ejectment—summary judgment**

Summary judgment should not have been granted for plaintiff landlord for summary ejectment where there was a conflict as to whether defendant lessees timely provided business interruption insurance as required by the lease and as to whether defendants reimbursed plaintiff for the cost of fire and casualty insurance as required by the lease.

Appeal by defendants from order filed 25 August 1999 by Judge Paul G. Gessner in Wake County District Court. Heard in the Court of Appeals 19 September 2000.

**LOOMIS v. HAMERAH**

[140 N.C. App. 755 (2000)]

*Michael W. Strickland & Associates, P.A., by Nelson G. Harris, for plaintiff-appellee.*

*David S. Crump for defendant-appellants.*

GREENE, Judge.

Imran Hamerah (Hamerah) and Khloud Kaff (Kaff) (collectively, Defendants) appeal an order filed 25 August 1999 granting a motion for summary judgment in favor of Katherine Loomis (Plaintiff).

Plaintiff, as the landlord, and Defendants, as the tenants, entered into a five-year Lease Agreement (the Lease) on 21 June 1994 for the property located at 3001 Hillsborough Street, Raleigh, North Carolina (the Premises). Plaintiff and Defendants relied heavily on Perry Mastromichalis (Mastromichalis), the attorney for Plaintiff, to prepare the Lease. The Lease provided in pertinent part:

> 9. <u>Alterations and Improvements</u>. [Defendants] shall have the right and privilege at any time during . . . [the Lease] to make, at [Defendants'] own expense, such changes, improvements and alterations to the Premises as [Defendants] may desire; provided, however, [Defendants] shall not make any material or structural changes to . . . [the Premises] without the prior written permissions of [Plaintiff] . . . [Defendants agree] . . . to make improvements to the [P]remises in excess of $30,000.00 and . . . provide [Plaintiff] with the plans for the remodeling of the [Premises].

> . . . .

> 11. <u>Indemnification and Liability Insurance</u>. . . . [Defendants] . . . will procure and keep in force at [their] own expense public liability insurance . . . which policy or policies of insurance shall show [Plaintiff] as an additional insure[d] . . . . [Defendants] will cause a certificate of insurance to be furnished to [Plaintiff] evidencing such coverage and said policy shall provide that said insurance may not be cancelled [sic] without written notice to [Plaintiff] at lease [sic] thirty (30) days prior to any cancellation.

> 12. <u>Property Insurance and Taxes</u>.

> . . . .

> B. [Defendants] shall also, at [Defendants'] sole cost and expense, obtain and keep in force business interruption insur-

ance on the operation of the Premises in an amount satisfactory to [Plaintiff].

C. . . . [Plaintiff's cost of maintaining fire and casualty insurance on the building] in such amount and to such extent as [Plaintiff] determines desirable . . . shall be paid by [Defendants], [and] shall be due and payable as additional rent . . . and shall be paid to [Plaintiff] at such time as [Plaintiff] is required to make such payment.

. . . .

16. Default. . . .

. . . .

(b) . . . [With the exception of nonpayment of rent default occurs upon Defendants' noncompliance with the] performance of any of the . . . covenants, agreements or conditions of [the] Lease, [provided such noncompliance] shall continue for a period of thirty (30) days after written notice thereof is given by [Plaintiff] to [Defendants].

17. Remedies. (a) Upon such a default, it shall be lawful for [Plaintiff], at [her] option, to declare the said term ended and to enter into the Premises or any part hereof, either with or without process of law, and expel [Defendants] . . . .

. . . .

(c) . . . [Plaintiff] may employ an attorney to enforce [Plaintiff's] rights and remedies and [Defendants] agree[] to pay to [Plaintiff] . . . reasonable attorney's fees.

. . . .

20. Option to Purchase. [Defendants] shall have the option to purchase [the Premises] after five (5) years of the [Lease] for $175,000 . . . [p]rovided that [Defendants are] not in default as provided herein . . . .

Beginning in February 1998, Plaintiff notified Defendants they were in noncompliance with the Lease in several respects. Defendants responded to each of the notices, contesting some of the matters and attempting to comply with others. Defendants received a notice from Plaintiff dated 24 November 1998, which informed Defendants they were in noncompliance in the following respects: (1)

LOOMIS v. HAMERAH

[140 N.C. App. 755 (2000)]

the payment of attorney's fees incurred by Plaintiff as a result of Plaintiff's efforts to obtain Defendants' compliance with the Lease; (2) failure to provide business interruption insurance in the amount of $100,000.00; (3) failure to pay fire and casualty insurance cost incurred by Plaintiff for purchase of a $250,000.00 policy; (4) failure to list Plaintiff as an additional insured in the public liability insurance policy; and (5) Defendants' structural changes to the building without Plaintiff's written consent. Plaintiff informed Defendants in this 24 November notice that these unauthorized structural changes must be inspected and approved by the City of Raleigh building inspector on or before 24 December 1998.

On 3 December 1998, Defendants responded to Plaintiff's 24 November notice by providing Plaintiff with certain insurance policies,[1] denying any obligation to pay attorney's fees, and agreeing to "complete and have final inspections for renovations prior to February 24, 1999." The delay in the inspections was necessitated, according to Defendants, because Kaff was hospitalized in her home country of Jordan and Hamerah needed to be with her in Jordan. Defendants also indicated they had sent Plaintiff a check in the amount of $450.00 to reimburse Plaintiff for the cost of the fire and casualty insurance policy.

On 13 December 1998, Plaintiff responded to Defendants' 3 December 1998 letter by reasserting Defendants' noncompliance and informing Defendants if these issues were not corrected by 24 December 1998, the Lease would be terminated. The noncompliance issues asserted are as follows: (1) the payment of attorney's fees incurred by Plaintiff as a result of Plaintiff's efforts to obtain Defendants' compliance with the Lease; (2) failure to provide business interruption insurance in the amount of $100,000.00; (3) failure to pay fire and casualty insurance cost incurred by Plaintiff for purchase of a $250,000.00 policy; and (4) the 24 February 1999 inspection of the structural changes by the City of Raleigh was unacceptable.

On 31 December 1999, Plaintiff notified Defendants the Lease was terminated and Defendants were directed to immediately vacate the Premises and surrender possession to Plaintiff. The grounds asserted in this notification for the termination are as follows:

---

1. Defendants provided Plaintiff with a copy of a public liability insurance policy in the amount of $1,000,000.00 effective 27 October 1998 through 27 October 1999, which named Plaintiff as an additional insured and a copy of a business interruption insurance policy providing coverage in the amount of $25,000.00 per quarter.

(1) [Defendants'] failure to provide adequate public liability insurance;

(2) [Defendants'] failure to provide adequate insurance coverage on the building;

(3) [Defendants'] failure to provide adequate business interruption insurance;

(4) [Defendants'] blatant defiance of [Plaintiff's] rights of ownership through fraudulent misrepresentations of [Defendants'] ownership of the [P]remises, including but not limited to

    (a) falsely stating both orally and in writing to city and county officials that [Defendants] are the owner of the [P]remises, and

    (b) stating the same under oath in a civil deposition, and

    (c) failing to correct such false statements at the written request of the landlord;

(5) [Defendants'] failure to keep the building in compliance with all building codes; and

(6) [Defendants'] failure to provide proper building permits to [Plaintiff] upon her request.

Plaintiff filed a complaint in summary ejectment on 31 December 1998 demanding to recover possession of the Premises based on the six grounds asserted in Plaintiff's 31 December letter to Defendants. On 20 January 1999, the magistrate entered a judgment in action for summary ejectment granting Plaintiff possession of the Premises and Defendants appealed to district court.

On 23 July 1999, Plaintiff moved for summary judgment. In support of her motion for summary judgment, Plaintiff offered evidence that she had not received any indication from Defendants showing compliance with building permits or building inspections and did not receive the endorsement changing Defendants' business interruption insurance coverage amount to $100,000.00 until 18 February 1999.

There was also evidence that in December 1998, Defendants were "in their home country, Jordan" because Kaff was hospitalized there and they had "made every reasonable effort to comply with any alleged defaults of" the Lease. Hamerah stated he obtained verbal

permission from Plaintiff or her attorney for all the repairs or improvements he made to the building, which improvements cost nearly $130,000.00, and he obtained a City building permit for each of the repair projects. Hamerah said he obtained a business interruption insurance policy in November 1998 in the amount of $100,000.00. Mastromichalis stated in his deposition that Plaintiff informed Defendants to "do what you want to do [to the building]; don't come to me; just pay money, pay rent." When Mastromichalis confronted Plaintiff about the Lease requirement that structural changes to the building required her prior written consent, Plaintiff responded "don't worry about it. It doesn't have to be."

On 25 August 1999, after considering the arguments of Plaintiff and Defendants and the evidence, the trial judge determined "there [was] no genuine issue as to any material fact, and that the Plaintiff [was] entitled to judgment as a matter of law."

---

The dispositive issue is whether there is a genuine issue of material fact as to Defendants' breach of the Lease, as asserted in Plaintiff's letter to Defendants dated 13 December 1998.

Plaintiff contends Defendants have breached the Lease in several respects and these breaches justify the termination of the Lease and the consequent summary ejectment.

A breach or default under the Lease occurs upon the nonpayment of rent and/or upon the failure of Defendants to correct a noncompliance with the Lease within 30 days after Plaintiff's notification of noncompliance. Defendants were notified on 24 November 1998 that they were in noncompliance with the Lease in several respects. Defendants responded to this notification and on 13 December 1998, Plaintiff again notified Defendants of their noncompliance with certain provisions of the Lease, namely: (1) the payment of attorney's fees incurred by Plaintiff as a result of Plaintiff's efforts to obtain Defendants' compliance with the Lease; (2) failure to provide business interruption insurance in the amount of $100,000.00; (3) failure to pay fire and casualty insurance cost incurred by Plaintiff for purchase of a $250,000.00 policy; and (4) the 24 February 1999 inspection by the City of Raleigh of the structural changes was unacceptable.

Plaintiff asserts, in her 31 December 1998 notice of the Lease termination, six different grounds of default. Because Plaintiff only referenced four grounds for default in her 13 December 1998 letter, she

LOOMIS v. HAMERAH

[140 N.C. App. 755 (2000)]

had no bases to terminate the Lease on any ground outside those provided for in the 13 December letter.[2]

Defendants contend there are genuine issues of material fact as to whether they breached the Lease, as asserted in the 13 December letter. We agree. There is a conflict in the evidence as to whether Defendants timely provided business interruption insurance in the amount of $100,000.00 and as to whether Defendants reimbursed Plaintiff for the cost of the fire and casualty insurance.[3] As for the inspections by the City of Raleigh building inspector, the Lease does not provide for such inspections. Furthermore, to the extent Defendants made structural changes to the building without Plaintiff's written consent, there is evidence in the record that Plaintiff waived this requirement. Finally, the payment of attorney's fees is an obligation placed on Defendants only if they have otherwise defaulted in the terms of the Lease. If there has been no default by Defendants, there is no obligation to pay Plaintiff's attorney's fees.

Accordingly, summary judgment was not proper and this case is remanded to the trial court. *See Smith v. Smith*, 65 N.C. App. 139, 142, 308 S.E.2d 504, 506 (1983) (summary judgment proper only if no genuine issues of material fact exist and movant entitled to judgment as a matter of law).

Reversed and remanded.

Judges MARTIN and EDMUNDS concur.

---

2. A default does not occur under the Lease until after Defendants have been notified of the alleged Lease noncompliance and 30 days have expired. In this case, Defendants were notified of several alleged instances of noncompliance in a letter dated 24 November 1998. After Defendants responded to that letter, Plaintiff modified her 24 November list of alleged instances of noncompliance. It is this modified list, included in the 13 December 1998 letter, which forms the present bases of Plaintiff's termination claim.

3. To the extent there has been a breach of any provision of the Lease, not every breach "justifies a cancellation and rescission" of the contract. *Childress v. Trading Post*, 247 N.C. 150, 156, 100 S.E.2d 391, 395 (1957). To justify termination of a lease, the breach "must be so material as in effect to defeat the very terms of the contract." *Id.* (citations omitted); *see also* 2 Richard R. Powell, *Powell on Real Property* § 17.02(1) (Michael Allan Wolf ed., 2000) (if a breach is immaterial, it will not permit termination of the lease); Restatement (Second) of Property: Landlord and Tenant § 13.1 (1977) (a landlord can terminate a lease if the tenant fails to perform a promise contained in the lease and the landlord is "deprived of a significant inducement to the making of the lease"). Whether or not a breach is material is generally a question of fact and not sub-

ject to summary judgment. John D. Calamari and Joseph M. Perillo, *Contracts* § 11-18, at 415 (4th ed. 1998); *see also Insurance Co. v. McDonald,* 36 N.C. App. 179, 184, 243 S.E.2d 817, 820 (1978); *Coleman v. Shirlen,* 53 N.C. App. 573, 578, 281 S.E.2d 431, 434 (1981).