NO. COA13-1180

NORTH CAROLINA COURT OF APPEALS

Filed:  5 August 2014

GRE PROPERTIES THOMASVILLE LLC,
     Plaintiff-Appellee,

     v.                              Davidson County
                                     No. 10CVD1417
LIBERTYWOOD NURSING CENTER, INC.,
     Defendant-Appellant.


     Appeal by defendant from judgment entered 28 December 2012 by Judge April C. Wood in Davidson County District Court. Cross-appeal by plaintiff from order entered 28 January 2013 by Judge Mary F. Covington in Davidson County District Court. Heard in the Court of Appeals 19 March 2014.


     *Robinson Bradshaw & Hinson, P.A., by Julian H. Wright, Jr., and Cary B. Davis, and Barnes, Grimes, Bunce & Fraley, PLLC, by D. Linwood Bunce, II, for plaintiff-appellee and cross-appellant.*

     *Nexsen Pruet, PLLC, by David S. Pokela, for defendant-appellant and cross-appellee.*


     McCULLOUGH, Judge.


     Libertywood Nursing Center, Inc. ("defendant"), appeals from the judgment in favor of GRE Properties Thomasville LLC ("plaintiff") in this summary ejectment action. Plaintiff cross-appeals from the order denying its motion for summary

judgment. For the following reasons, we find no error.

## I. Background

This case arises out of plaintiff's lease of a premises located at 1028 Blair Street in Thomasville, North Carolina, to defendant for the operation of a nursing home. The lease, dated 25 August 2000 and executed by plaintiff's predecessor in interest, Ganot Corporation, and defendant, provided for an initial ten year term commencing 1 October 2000 with options for defendant to extend the lease for two additional five year terms.

Particularly relevant to this appeal, the lease contained the following provisions:

> SECTION 5.5 Waste Lessee shall not commit, or suffer to be committed, any waste on the Leased Premises nor shall Lessee maintain, commit or permit the maintenance or commission of any nuisance on the Leased Premises or use the Leased Premises for any unlawful purpose. For purposes of the Article 5.5 "waste" as used herein includes, but is not limited to, loss, or serious and imminent threat of loss as reasonably determined in good faith by Lessor, Regarding: (i) the license to operate the leased premises as a nursing home; (ii) any certificate of need rights; or (iii) any other governmental license or certification material to the operation of the Leased Premises as a nursing home, including but not limited to, certification for participation in the Medicare and/or Medicaid Programs under Titles XVIII and XIX

of the Social Security Act, as amended. . . .

SECTION 8.1 Lessee assumes the full and sole responsibility for the condition, furnishing, operation, repair and maintenance of the Demised Premises and every portion thereof from and after the Commencement Date of the Term of this Lease and (except as expressly set forth in Section 2.1) Lessor shall not under any circumstances be responsible for the performance of any repairs, replacements, changes or alterations whatsoever or the furnishing of any services in or to the Demised Premises or the Buildings and Lessor shall not be liable for the cost thereof. Lessee and Lessor agree that, throughout the Term of this Lease, Lessee, at Lessee's sole cost and expense, shall maintain and repair the Demised Premises, the Buildings, and the sidewalks and curbs adjacent or appurtenant thereto, and shall keep or cause the same to be maintained in good order and condition, and promptly at Lessee's own cost and expense, make all necessary repairs, replacements thereto, interior and exterior, structural and non-structural, ordinary as well as extraordinary, foreseen as well as unforeseen, and shall keep and maintain all portions of the Demised Premises and the Buildings and the sidewalks adjoining the same in a clean and orderly condition, free of accumulation of dirt, rubbish, snow and ice. When used in this Article VIII or in Article IX, the Term "repairs" shall include all necessary replacements, renewals, alterations, additions and betterments. All repairs made by Lessee shall be at least equal in quality and class to the original work. The necessity for and adequacy of repairs to the Buildings pursuant to this Section 8.1 shall be measured by the standard which is appropriate for buildings

of similar construction, use, class and location, provided that Lessee shall in any event make all repairs necessary to avoid any structural damage or injury thereto.

SECTION 19.1 If during the Term of this Lease Lessee shall:

. . . .

(c) default in fulfilling any of the covenants of this Lease (other than the covenants for the payment of Basic Rent, additional rent and other charges payable by Lessee hereunder), and Lessee shall not within twenty (20) days after the giving to Lessee by Lessor of written notice of such default, have cured such default (or, in the case of default which cannot with due diligence be cured by Lessee within such twenty (20) day period, then provided Lessee in good faith commences such curing within said twenty (20) day period, within such extended period as may be necessary to complete the curing of same with all due diligence); . . . .

. . . .

Lessor, at its option, may give to Lessee a notice of intention to Terminate this Lease, effective as of the date of the occurrence of an Event of Default, whereupon this Lease and all right, title and interest of Lessee hereunder shall Terminate as fully and completely as if that day were the date herein specifically fixed for the expiration of the Term, and Lessee will then quit and surrender the Demised Premises to Lessor, but Lessee shall remain liable as hereinafter provided.

When defendant took possession of the premises, it did so "as is" with the roof in poor condition and in need of repair. As leaks occurred, defendant would repair them. However, in 2009 defendant began receiving complaints from plaintiff about the condition of the premises. Specifically, on 19 November 2009, defendant received a letter from plaintiff requesting defendant provide a plan to address alleged violations of Article VIII of the lease. These alleged violations included "a number of roof leaks" and "moisture in the walls" that could "develop into serious damage to the building[,]" "deficiencies noted in recent surveys[,]" repairs needed to the parking and roadway, and repairs to the brick veneer. Defendant then received a follow-up letter from plaintiff on 10 December 2009 that noted the dreadful condition of the premises. In the second letter, plaintiff stated the following:

> Within thirty days the roof must be renewed as well as the gutters and downspouts.
>
> All asphalt must be renewed in thirty days. Also a suitable scheduled replacement of all the worn-out furnishings must be approved.
>
> You must diligently tend to a possible mold problem. Brick mortar must be replaced where required as does caulking around windows and doors.

To end the letter, plaintiff noted it "look[ed] forward to [defendant's] response before January 10, 2010."

On 2 February 2010, counsel for plaintiff sent defendant a notice of default. The notice also informed defendant of an inspection and offered defendant the opportunity to submit and implement a plan to cure the defaults and bring the premises into compliance with the terms of the lease. On 23 February 2010, defendant gave notice to plaintiff of its intent to extend the lease for an additional five year term and, on 18 March 2009, responded through counsel to plaintiff's 2 February 2010 notice of default. In defendant's response, defendant denied it was in default of the lease.

By letter dated 1 April 2010, plaintiff terminated the lease and demanded that defendant immediately vacate the premises.

When defendant did not vacate the premises, plaintiff initiated this summary ejectment action to remove defendant from the premises. Plaintiff filed its Complaint in Summary Ejectment in Davidson County Small Claims Court on 14 April 2010. Following a hearing, the magistrate entered a Judgment in Action for Summary Ejectment in favor of plaintiff on 22 April 2010. Defendant appealed that judgment to District Court.

Once in District Court, defendant filed an Answer & Counterclaim on 14 May 2010 to which plaintiff replied on 11 June 2010.

Following a period of discovery, on 11 July 2012, plaintiff moved for summary judgment. In both the motion and a brief filed in support of the motion, plaintiff argued defendant was in default of Section 5.3 of the lease when it gave notice of its intention to exercise the renewal option on 23 February 2010. Thus, plaintiff argued the notice was void and without effect, resulting in the expiration of the lease at the end of the initial 10 year term on 31 October 2010. On 29 August 2012, plaintiff's motion for summary judgment came on for hearing in Davidson County District Court before the Honorable Mary F. Covington, who announced her decision to deny the motion at the conclusion of the hearing.

By Notice of Voluntary Dismissal filed 20 November 2012, defendant dismissed its counter-claim against plaintiff.

On 26 November 2012, the case came on for a pre-trial hearing, during which the court considered a motion in limine by plaintiff to strike the deposition testimony of Mr. John M. Underwood, a former employee of plaintiff's parent company who was deposed in both his individual capacity and as plaintiff's

corporate designee pursuant to N.C. Gen. Stat. § 1A-1, Rule 30(b)(6). At the conclusion of the hearing, the trial court denied plaintiff's motion in limine and entered a Final Order on Pre-trial Conference.

The following day, 27 November 2012, the case was called for jury trial in Davidson County District Court, the Honorable April C. Wood, Judge presiding.

At the conclusion of the trial on 12 December 2012, the jury returned verdicts in favor of plaintiff finding: (1) defendant violated provisions of the lease and failed to cure those violations after being provided written notice and an opportunity to cure; and (2) plaintiff did not waive defendant's defaults. The trial court then entered judgment for plaintiff ordering defendant be removed from and plaintiff be put in possession of the premises.

On 4 January 2013, defendant filed post-trial motions for judgment notwithstanding the verdict and, alternatively, a new trial. Those motions were denied by order of the trial court filed 18 January 2013. An additional order memorializing the prior denial of plaintiff's 11 July 2012 motion for summary judgment was subsequently filed on 28 January 2013.

Defendant filed Notice of Appeal on 8 February 2013. Plaintiff filed Notice of Cross-Appeal shortly thereafter on 13 February 2013.

## II. Discussion

On appeal, defendant contends the trial court erred in (1) failing to instruct the jury that a breach of a commercial lease must be material to warrant forfeiture of the lease and ejectment; and (2) denying it the right to call plaintiff's counsel as witnesses at trial. On cross-appeal, plaintiff contends the trial court erred in denying its motion for summary judgment prior to the jury trial. We address these issues in order.

### Jury Instruction

During the charge conference, the parties agreed that the trial judge should instruct the jury pursuant to N.C.P.I.--Civil 845.00, the pattern instruction for summary ejectment when there has been a violation of a provision in a lease. Defendant, however, proposed that the trial judge add the following instruction on materiality to the pattern instruction:

> Fifth, that [d]efendant's default under Section 19.1(c), Section 8.1 and/or Section 5.5 of the Lease was so material that it justified a termination of the Lease[.]

Upon considering defendant's request, the trial judge declined to include the special instruction and noted defendant's objection to the omission prior to instructing the jury. The trial judge then proceeded to issue the following instructions to the jury:

> The first issue reads, is the landlord, GRE, entitled to possession of the leased premises on the ground tenant, Libertywood, violated provisions of the lease and failed to cure those violations after being provided written notice by GRE and an opportunity to cure.
>
> On this issue the burden of proof is on GRE. This means that GRE must prove by the greater weight of the evidence several things. First, that Libertywood took possession of the premises under a lease with GRE. A lease is a contract for the exclusive possession of a premises. A lease may be written or verbal. Second, that the parties agreed that as part of the lease tenant, Libertywood, . . . A. [w]ould . . . maintain[] the premises and make all necessary repairs and replacements in accordance with section eight point one (8.1) of the lease, and B. would not permit waste as set forth [in] section five point five (5.5) of the lease.
>
> Third, that the parties agreed that the lease would terminate in the event the tenant, Libertywood, violated – sections eight point one (8.1) or five point five (5.5) of the lease and the[n] failed to cure or commence in good faith to cure the violations within twenty days after receiving written notice from GRE as required by section nineteen point one

(19.1) of the lease.

Four, that Libertywood violated sections eight point one (8.1), and five point five (5.5) of the lease an[d] failed to cure or commence in good faith to cure the violations within twenty days after receiving written notice from GRE.

Fifth, that GRE terminated the lease as provided by the lease by giving Libertywood written notice of termination on April the first, two thousand ten (4/1/2010) and Libertywood did not vacate the premises.

Finally, as to this issue on which GRE has the burden of proof, if you find that by the greater weight of the evidence, that the landlord is entitled to possession of the leased premises then it would be your duty to answer this issue yes in favor of GRE. If, on the other hand, you fail to so find then it would be your duty to answer this issue no, in favor of Libertywood.

These instructions closely mirror N.C.P.I.--Civil 845.00 and exclude an instruction on materiality.

Now, on appeal, defendant first argues the trial court erred in failing to issue the requested instruction on materiality.

This Court has recognized a four part test to determine if the trial court erred in refusing to give a requested instruction.

A specific jury instruction should be given when "(1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the

> instruction given, considered in its
> entirety, failed to encompass the substance
> of the law requested and (4) such failure
> likely misled the jury."

*Outlaw v. Johnson*, 190 N.C. App 233, 243, 660 S.E.2d 550, 559 (2008) (quoting *Liborio v. King*, 150 N.C. App. 531, 534, 564 S.E.2d 272, 274, *disc. review denied*, 356 N.C. 304, 570 S.E.2d 726 (2002)).  In addition, "[f]ailure to give a requested and appropriate jury instruction is reversible error [only] if the requesting party is prejudiced as a result of the omission." *Id.*

Defendant first contends the law requires breaches of a lease to be material to justify summary ejectment.  Thus, in accordance with the test set forth in *Outlaw*, defendant asserts the requested instruction on materiality was a correct statement of the law.  In support of its argument, defendant cites this Court's decision in *Loomis v. Hamerah*, 140 N.C. App. 755, 538 S.E.2d 593 (2000), as well as cases and treatises that are not binding on this Court.

In *Loomis*, this Court reviewed the trial court's grant of summary judgment in favor of a landlord who brought a summary ejectment action.  As this Court explicitly stated in the opinion, the dispositive issue in *Loomis* was "whether there [was] a genuine issue of material fact as to [the d]efendant's

breach of the [l]ease[.]" *Loomis*, 140 N.C. App. at 760, 538 S.E.2d at 596. Upon review, this Court agreed with the tenants and held genuine issues of material fact existed as to whether the tenants breached the lease. *Id*. at 761, 538 S.E.2d at 596-97. As a result, this Court reversed the grant of summary judgment in favor of the landlord and remanded the case to the trial court. *Id*. at 761, 538 S.E.2d at 597.

In citing *Loomis*, defendant relies on the following language that this Court reduced to a footnote:

> To the extent there has been a breach of any provision of the [l]ease, not every breach "justifies a cancellation and rescission" of the contract. *Childress v. Trading Post*, 247 N.C. 150, 156, 100 S.E.2d 391, 395 (1957). To justify termination of a lease, the breach "must be so material as in effect to defeat the very terms of the contract." *Id*. (citations omitted)[.]

*Id*. at 761 n.3, 538 S.E.2d at 597 n.3. Upon review of the *Loomis* opinion, it is clear to us that the above footnoted language was merely dicta and unnecessary to the Court's determination that genuine issues of material fact existed as to whether the tenants breached the lease. Thus, the language is not authoritative. Moreover, we note the case cited in the footnote in *Loomis* is not a summary ejectment case resulting from a breach of a lease, but a construction contract case involving alleged breaches of and variations from an agreement

between builder and owner. *See Childress*, 247 N.C. at 156, 100 S.E.2d at 395 ("Not every breach of a contract justifies a cancellation and rescission. The breach must be so material as in effect to defeat the very terms of the contract.").

Upon review of *Loomis*, *Childress*, and the other non-binding authorities cited by defendant, we are not persuaded the trial court erred in refusing to issue the requested instruction on materiality.

In North Carolina, "[s]ummary ejectment proceedings are purely statutory[.]" *Marantz Piano Co., Inc. v. Kincaid*, 108 N.C. App. 693, 696, 424 S.E.2d 671, 672 (1993). Among other events, North Carolina's General Statutes allow for summary ejectment "[w]hen the tenant or lessee . . . has done or omitted any act by which, according to the stipulations of the lease, his estate has ceased." N.C. Gen. Stat. § 42-26(a)(2) (2013). "Under [N.C. Gen. Stat. § 42-26(a)(2)], a breach of the lease cannot be made the basis of summary ejectment unless the lease itself provides for termination by such breach or reserves a right of reentry for such breach." *Stanley v. Harvey*, 90 N.C. App. 535, 537, 369 S.E.2d 382, 384 (1988). In the present case, Section 19.1 of the lease provided for termination of the lease upon breach of Sections 5.5 and 8.1.

Upon review of the pattern instructions and the instructions provided in this case, stated above, we hold N.C.P.I.--Civil 845.00, as applied in this case, sufficiently addressed the required elements for summary ejectment under North Carolina law. Therefore, the trial court did not err in denying defendant's request to add a special instruction on materiality.

Moreover, assuming arguendo the trial court erred in failing to issue defendant's requested instruction on materiality, we are not convinced that defendant was prejudiced. The instructions to the jury specifically identified Sections 5.5 and 8.1 as the relevant provisions for deciding whether a breach of the lease occurred. Upon review of the lease, it is clear that Sections 5.5 and 8.1 are not insignificant to the agreement between plaintiff and defendant; thus, we find it unlikely that a breach of either section would be immaterial. Accordingly, even if the requested instruction on materiality was a correct statement of North Carolina law, defendant was not prejudiced by the omission and the error does not amount to reversible error.

<u>Counsel as a Witness</u>

As noted in the background, during discovery Mr. Underwood, the former director of construction and development for plaintiff's parent company, was deposed in both his individual capacity and as plaintiff's corporate designee pursuant to N.C. Gen. Stat. § 1A-1, Rule 30(b)(6). Certain portions of Mr. Underwood's testimony were favorable to defendant.

Although plaintiff did not raise concerns about Mr. Underwood's competence during the deposition held in October 2010, months later, after learning Mr. Underwood had been diagnosed with a neurological condition affecting his memory, plaintiff filed a motion in limine pursuant to N.C. Gen. Stat. § 8-81 to exclude his deposition testimony from trial. In support of its motion, plaintiff argued unfair prejudice and lack of personal knowledge under Rules 403 and 602 of the North Carolina Rules of Evidence. Upon considering arguments made during a 26 November 2012 pre-trial hearing, the trial court denied plaintiff's motion in limine.

Thereafter, defendant introduced Mr. Underwood's deposition testimony into evidence at trial and read portions of the testimony to the jury. In response, plaintiff introduced the deposition testimony of Mr. Underwood's neurologist into evidence in order to attack the credibility of Mr. Underwood's

deposition testimony.  Portions of the deposition testimony by Mr. Underwood's neurologist called Mr. Underwood's memory at the time his deposition was taken into question.  Specifically, Mr. Underwood's neurologist stated he believed Mr. Underwood was suffering from mild dementia in October 2010.

In order to rebut plaintiff's assertions that Mr. Underwood was not competent at the time of his deposition, during discussions in chambers, defendant requested it be able to call Julian Wright and Cary Davis, counsel for plaintiff, to testify regarding their preparation of Mr. Underwood for his deposition. The trial judge, however, denied the request in chambers.  As a result, defendant was not able to question plaintiff's counsel on Mr. Underwood's competence.  Defendant did, however, attempt to make an offer of proof to preserve its right to appeal.

Now, on appeal, defendant argues the trial court erred in denying its request to call plaintiff's counsel as witnesses of Mr. Underwood's competence in order to bolster Mr. Underwood's deposition testimony.  Yet, defendant cites only *State v. Kirby*, 206 N.C. App. 446, 456, 697 S.E.2d 496, 503 (2010), for the proposition that issues of relevance are reviewed *de novo* and fails to cite any further legal authority in support of its argument.  As a result, we find defendant has abandoned this

argument.  *See* N.C. R. App. P. 28(b)(6) (2014) ("*The body of the argument* and the statement of applicable standard(s) of review shall contain citations of the authorities upon which the appellant relies.") (emphasis added).

Although defendant's argument is abandoned, we take this opportunity to note

> [t]here is . . . a natural reluctance to allow attorneys to appear in a case as both advocate and witness.  Therefore, the decision of whether to permit [it] is within the discretion of the trial court.  The circumstances under which a court will permit a lawyer for a party . . . to take the witness stand must be such that a compelling reason for such action exists.

*State v. Simpson*, 314 N.C. 359, 373, 334 S.E.2d 53, 62 (1985) (citations omitted).

Where other witnesses could testify to Mr. Underwood's competence, the trial court did not abuse its discretion in denying defendant's request to call plaintiff's counsel as a witness.

### Directed Verdict

In addition to responding to defendant's arguments on appeal, plaintiff asserts, as an alternative basis in the law supporting the judgment, that the trial court erred in denying its motion for a directed verdict.  Because we find no error in

the trial below, we do not address plaintiff's alternative argument.

## Summary Judgment

In the event we reversed the judgment based on the jury's verdict, plaintiff filed a cross-appeal contending the trial court erred in denying its motion for summary judgment. Because the judgment based on the jury's verdict stands, we do not address plaintiff's cross-appeal. Furthermore, an appeal of a denial of summary judgment is ordinarily not reviewable on appeal from a final judgment rendered in a trial on the merits. *See Harris v. Walden*, 314 N.C. 284, 286-87, 333 S.E.2d 254, 256 (1985).

## III. Conclusion

For the reasons discussed, we find no error in the trial below.

No error.

Judges ELMORE and DAVIS concur.